No. 25-11006-B

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**BAMC DEVELOPMENT HOLDING, LLC; ROBERT PRESCOTT; 1802 W. PLATT ST LLC; and TAMPA HYDE PARK CAFE PROPERTIES, LLC,**
*Appellants,*

v.

**LARRY S. HYMAN, as Chapter 7 Trustee; and WILMINGTON SAVINGS FUND SOCIETY, FSB,**
*Appellees.*

**Appeal from the United States District Court
for the Middle District of Florida**

**District Court Case No. 8:23-cv-2939 (Lead Case)
consolidated with 8:23-cv-2979; and  8:24-cv-00119**

**Bankruptcy Case No.  8:22-bk-1487**

---

## APPELLANTS' BRIEF

---

Heather A. DeGrave (FBN: 756601)
hdegrave@walterslevine.com
jduncan@walterslevine.com
Walters Levine & DeGrave
601 Bayshore Blvd., Suite 720
Tampa, FL 33606
Telephone: (813) 254-7474
*Attorneys for Appellants*

1

**Certificate of Interested Persons**

Appellants, Tampa Hyde Park Cafe Properties, LLC ("THPCP"), BAMC Development Holding, LLC ("BAMC"), 1802 W Platt St LLC ("1802 Platt"), and Robert Prescott ("Prescott"), through counsel and pursuant to 11th Cir. R. 26.1-1 through 26.1-4, certify that the following persons and entities have or may have an interest in the outcome of this appeal:

212 Fremont LLC

1802 W Platt St LLC

2408 W. Kennedy, LLC

BAMC Development Holding, LLC

CPT Acquisitions, LLC

DeGrave, Heather A.

Dorr, Teresa Marie

Hannouche, Peter

Hop-Hedz, Inc.

Hyman, Larry S.

Jacobs, Eric D.

McEwen, Catherine Peek (United States Bankruptcy Judge)

Meacham, W. Bart

MTGLQ Investors, L. P.

Ortiz, Thomas

Poppi34Florida, LLC

Prescott, Robert

Rogers, Alfred T.

Rogers, Reeves

Roma 71, LLC

Saez, Roberto

Scott, Christopher

Scriven, Mary S. (United States District Judge)

Silver, James D.

Tampa Hyde Park Cafe, LLC

Tampa Hyde Park Cafe Properties, LLC

Venable LLP

Walters Levine & DeGrave

Williamson, Leon A.

Wilmington Savings Fund Society, FSB

## Corporate Disclosure Statement

Pursuant to 11th Cir. R. 26.1-3, THPCP, BAMC, 1802 Platt, and Prescott (collectively "Appellants") certify that no publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

Appellants contend that the decisional process would be significantly aided by oral argument, and therefore request it.

# Table of Contents

**Certificate of Interested Persons** ................................................................. 2

**Corporate Disclosure Statement** .................................................................. 4

**Statement Regarding Oral Argument** ........................................................... 5

**Table of Contents** ........................................................................................ 6

**Table of Citations** ....................................................................................... 8

**Jurisdictional Statement** ........................................................................... 10

**Statement of the Issues** .............................................................................. 13

**Statement of the Case and Facts** ............................................................... 16

**Summary of the Argument** ........................................................................ 20

**Argument** ................................................................................................... 23

    Standard of Review ................................................................................... 23

    A.     The Bankruptcy Court Entered the *Emergency* and *Amended Sale Orders* Without the Notice and Hearing Required by Law, and the District Court Erred by Overlooking These Deficiencies ............................................................... 23

    B.     The Bankruptcy Court Entered the Sale Order Without Providing Proper Notice or an Opportunity to Be Heard, in Violation of Statutory, Procedural, and Constitutional Requirements .......................................................................... 26

    C.  The Motion to Sell and Notice of Hearing Did Not Provide Appellants with Adequate Notice That Their Property Rights Were at Risk .......................... 30

    D(i).  The Bankruptcy Court Erred by Authorizing the Sale Without Determining That the Interest Was Property of the Estate as Required by 11 U.S.C. § 363(b) ........ 32

    D(ii). The Bankruptcy Court Erred in Authorizing the Sale Because the Property Was Not Property of the Estate Under § 541(d) ............................................... 34

    E.     The Bankruptcy Court Erred in Authorizing the Sale of the Beneficial

Interest Because It Is Not the Type of Interest That Can Be Sold Under § 363(h) ......37

F.  The Bankruptcy Court Erred in Allowing the Sale of Appellants' Equitable Interest in the Property Without Addressing the Preclusive Effect of the Prior Final Orders in the THPCP Case ..................................................................................39

G.      The Bankruptcy Court Erred in Authorizing the Sale of the Lease or Any Leasehold Interest in the Property Post-Rejection, in Violation of 11 U.S.C. §§ 363 and 365, and Established Case Law ....................................................................41

H.      The Bankruptcy Court Erred in Ordering the Sale of the Property Without Providing Adequate Protection of Appellants' Property Interests as Required by 11 U.S.C. § 363(e) ........................................................................................................44

I.  The Bankruptcy Court Committed Legal Error by Relying on 11 U.S.C. § 363(f)(4) and a Finding of Bona Fide Dispute to Justify Sale of Property Over Appellants' Objection ...................................................................................................47

J.  The Bankruptcy Court Committed Legal Error in Applying 11 U.S.C. § 363(f)(5) to Authorize the Sale of the Property Free and Clear of Prescott's Interest Without Establishing a Valid Legal Mechanism to Compel Acceptance of a Monetary Satisfaction ...............................................................................................49

K.      The Bankruptcy Court Erred in Approving the Sale Without a Valid Business Justification Under 11 U.S.C. § 363(b) .........................................................52

L.      The Bankruptcy Court Erred in Finding the Final Judgment Non-Final Under *Rooker-Feldman* ...............................................................................................54

M.  The Bankruptcy Court Erred in Applying the *Justice Oaks* Factors.....................56

**Conclusion**.................................................................................................................. 62

**Certificate of Compliance Required by FRAP 32(g)(1)** ............................................ 63

**Certificate of Service**.................................................................................................. 64

## Table of Citations

**CASES**

Atlantic Beach Improvement Corp. v. Hall, 143 Fla. 778, 197 So. 464 (1940) ......35

Bush v. Balfour (In re Bush), 62 F.3d 1319 (11th Cir. 1995) ..................................42

Dixon v. U.S. Atty. Gen., 768 F.3d 1339 (11th Cir. 2014) ......................................24

In re Continental Air Lines, Inc., 780 F.2d 1223 (5th Cir. 1986) .................... 33, 53

In re Das A. Borden & Co., 131 F.3d 1459 (11th Cir. 1997) ...................................24

In re Fitzgerald, 428 B.R. 872 (B.A.P. 9th Cir. 2010) ............................................26

In re Gulf States Steel, Inc. of Ala., 285 B.R. 497 (Bankr. N.D. Ala. 2002) ...........51

In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983) ...................................................53

In re McIntyre, Case No. 10-30570-WRS, Memorandum Decision (Bankr. M.D. Alabama, December 23, 2014) ................................................................ 33, 53, 54

In re Miller, 282 F.3d 874 (6th Cir.2002) ................................................................43

In re MMH Auto. Grp., LLC, 385 B.R. 347 (Bankr. SD Fla. 2008) .......... 29, 31, 44

In re Moore, 608 F.3d 253 (5th Cir. 2010) ..............................................................53

In re Moore-McKinney, 603 B.R. 855 (Bankr. N.D. Ga. 2019) ..............................42

In re Payne, 512 B.R. 421 (Bankr. E.D.N.Y. 2014) .................................................53

In re Provider Meds, LLC, 907 F.3d 845 (5th Cir. 2018) ........................................43

In re PW, LLC, 391 B.R. 25 (9th Cir. BAP 2008) ...................................................51

In re R.F. Cunningham & Co., 355 B.R. 408 (Bankr. E.D.N.Y. 2006) ............. 46, 47

In re Rosenfeld, 23 F.3d 833 (4th Cir.1994) ...........................................................43

In re Scharp, 463 B.R. 123 (Bankr. C.D. Ill. 2011) ................................................43

In Re Schimmelpenninck, 183 F.3d 347 (5th Cir.1999) ..........................................54

In re SunEdison, Inc., 562 B.R. 243 (Bankr. S.D.N.Y. 2017) .......................... 46, 47

Matter of Baldwin United Corp., 43 B.R. 888 (Bankr. S. D. Ohio 1984) ..............53

Nilhan Dev., LLC v. Glass (In re Nilhan Dev., LLC), 631 BR 507 (Bankr. N.D. Ga. 2021) .....................................................................................................................42

Pensacola Wine and Spirits Distiller's Inc. v. Gator Distributors, Inc., 448 So.2d 34

(Fla. 1st DCA 1984)............................................................35

Precision Industries, Inc. v. Qualitech Steel SBQ, LLC, 327 F.3d 537 (2d Cir. 2003) ....................................................................... 36, 44

Smith v. Slott, 683 F.Supp.3d 1331 (S.D. Fla. 2023) ...................................... passim

Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317 (11th Cir. 2015)............24

## STATUTES

11 U.S.C. § 102 ....................................................................... passim

11 U.S.C. § 363 ....................................................................... passim

11 U.S.C. § 365 ....................................................................... passim

11 U.S.C. § 502 ....................................................................... 20, 60

11 U.S.C. § 541 ....................................................................... passim

11 U.S.C. § 544 ...........................................................................49

11 U.S.C. § 554 ....................................................................... 19, 53, 59

28 U.S.C. § 158 ....................................................................... 12, 13

## RULES

Fed. R. Bankr. P. 2002....................................................................... passim

Fed. R. Bankr. P. 6004....................................................................... 24, 27, 29

Fed. R. Bankr. P. 7004...........................................................................27

Fed. R. Bankr. P. 9006...........................................................................27

Fed. R. Bankr. P. 9014....................................................................... 24, 27

# Jurisdictional Statement

On December 20, 2023, Appellants timely appealed to the District Court, Middle District of Florida ("District Court"), two final orders entered by the United States Bankruptcy Court in and for the Middle District of Florida ("Bankruptcy Court"), titled: (A) *Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* ("*Sale Order*") entered on November 6, 2023 (D.D. 3:111);[1] and (B) *Order Denying Motions for Reconsideration of Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Free and Clear of Liens, Claims, and Encumbrances* ("*Order Denying Reconsideration*") entered on December 11, 2023. (D.D. 3:141)  That appeal was assigned Case No. 8:23-cv-2979 by the clerk of the District Court.

On December 20, 2023, Appellants also timely appealed to the District Court two final orders entered by the Bankruptcy Court, titled: (A) *Order Granting Emergency Motion to Modify Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* ("*Emergency Order*") entered on

---

[1] Unless specifically stated otherwise, record citations will be to District Court Docket ("D.D.") in the lead case, Case No. 8:23-cv-2939, "D.D." will be followed by the Docket Entry and then the number, if any, for the particular item in the record within that Docket Entry being cited.

December 11, 2023 (D.D. 3:143); and (B) *Amended Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* ("*Amended Sale Order*") entered on December 11, 2023. (D.D. 3:144)   That appeal was assigned Case No. 8:23-cv-2939 by the clerk of the District Court.

On December 26, 2023, Appellants timely appealed to the District Court a final order entered by the Bankruptcy Court, titled: *Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* ("*Order Approving Compromise*") entered on December 11, 2023. (D.D. 3:140). That appeal was assigned Case No. 8:24-cv-00119 by the clerk of the District Court.

The District Court had jurisdiction over each of the three (3) appeals, in accordance with 28 U.S.C. § 158(a)(1).

The District Court consolidated the three (3) appeals, with Case No. 23-cv-2939 being designated the lead case.

On March 11, 2025, the District Court entered an *Order* in the lead case, Case No. 23-cv-2939, affirming the bankruptcy court's rulings, as reflected in the five *Orders* on appeal, to wit: the *Sale Order*; the *Order Denying Reconsideration*; the *Amended Sale Order*; the *Emergency Order*; and the *Order Approving*

*Compromise*.  The *Order* entered by the District Court on March 11, 2025 may be referred to as the "*DC Order*".

Appellants timely appealed the DC *Order* to this Court on March 25, 2025, which has jurisdiction pursuant to 28 U.S.C. § 158(d)(1).

# Statement of the Issues

A.    Did the District Court commit legal error in rejecting Appellants' argument that the *Emergency Order* and *Amended Sale Order* were entered in violation of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Appellants' right to due process, notice, and the opportunity to be heard?

B.    Did the District Court commit legal error in rejecting Appellants' arguments that (i) the *Motion to Sell* was not served on THPCP or HPC in the manner and method required by law, (ii) the *Motion to Sell* was not notice to Appellants that they could lose their property and property rights at a hearing, (iii) the notice of the preliminary hearing on October 30, 2023 was not served on THPCP or HPC in the manner and method required by law, and (iv) such notice of preliminary hearing was not notice to them that they could lose their property and property rights at a preliminary hearing on October 30, 2023?

C.    Did the District Court commit legal error as to Appellants' arguments that: (i) the *Motion to Sell* was not notice to Appellants that they could lose their property and property rights at a hearing; and (ii) the notice of the preliminary hearing on October 30, 2023 was not notice to Appellants that they could lose their property and property rights at a preliminary hearing on October 30, 2023?

D(i).   Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in authorizing the sale of the beneficial interest in the Property without determining that it is "property of the estate"?

D(ii).  Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in authorizing the sale of the beneficial interest in the Property since it is not "property of the estate"?

E.    Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in authorizing the sale of the beneficial interest in Property since it is not the type or kind of non-debtor interest in property that can be sold under 11 U.S.C. § 363 (h)?

F.     Did the District Court commit legal error in rejecting Appellants' argument that "[i]f the Court were to disagree with Appellants as to every other argument and issue raised in this Brief, then HPC would still have purchased 100% of all beneficial interests in the Property, and 1802 Platt would still be the owner of all such interests, since the Orders entered on October 16, 2023 in the THPCP Case, that ordered and authorized the sale to HPC and its assign(s), were final, unappealable orders before the auction in the BAMC Case was even authorized"?

G.     Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in ordering the sale of the Property free and clear of the Lease since (i) Hyman claims that he rejected the Lease, (ii) Hyman is deemed to have rejected the Lease in accordance with 11 U.S.C. § 365 (d), and (iii)  therefore, Hyman did not have the power to sell the Lease, assume the Lease, assign the Lease, cancel the Lease, terminate the Lease, or treat the Lease as property of the estate in any other way.

H.     Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in ordering the sale of the Property without providing adequate protection of Prescott's, THPCP's, and HPC's interest in the Property, as required by 11 U.S.C. § 363 (e)?

I.     Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred in using 11 U.S.C. §  363 (f)(4), and a finding that the beneficial interest in the Property is in bona fide dispute, to order the sale of the Property over THPCP's and HPC's objection?

J.     Did the District Court commit legal error in rejecting Appellants argument that the Property could not be sold, under 11 U.S.C. §  363 (f)(5), free and clear of Prescott's interest?

K.     Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred since there is no business justification for Hyman's sale of the Property?

L.     Did the District Court commit legal error by rejecting Appellants' argument that the bankruptcy court erred in ruling that the Final Judgment is non-final for purposes of *Rooker-Feldman*?

M. Did the District Court commit legal error in rejecting Appellants' argument that the bankruptcy court erred as to the *Justice Oaks* factors?

## Statement of the Case and Facts

This appeal arises from the Chapter 7 bankruptcy of BAMC, in which the Trustee, Steven Hyman, sought and obtained court approval to sell the real property located at 212 S. Fremont Ave., Tampa, FL (the "Property") and to compromise claims with Wilmington Savings Fund Society ("Wilmington"), over objections by Robert Prescott, THPCP, and others.

### The Foreclosure and Final Judgment

On August 21, 2018, a *Final Judgment of Foreclosure* was entered in favor of MTGLQ Investors, L.P., the predecessor to Wilmington, in the amount of $206,887.32. Prescott was a party to the foreclosure action and the holder of a valid second mortgage. The *Final Judgment* was affirmed on appeal, and a Mandate issued on January 28, 2020, more than three years before the bankruptcy court found it to be "non-final" for purposes of the *Rooker-Feldman* doctrine (D.C. Dkt. 119 2:14–15; D.D. 3:43, Ex. A).

### BAMC's Bankruptcy and THPCP's Option

BAMC filed for Chapter 11 bankruptcy on April 13, 2022. Its schedules disclosed the Property, a first mortgage held by MTGLQ/Wilmington, and a second mortgage held by Prescott. BAMC also disclosed a prepetition "Option Exercise and Ch. 11 Plan Sponsor Agreement" with THPCP. The Option was exercised

prepetition on April 11, 2022, and BAMC accepted a $20,000 payment. The Property was not otherwise used or maintained by the estate (D.D. 3:7; D.D. 3:43, Ex. A at 22–29).

**Procedural History**

Hyman filed a *Motion to Approve Compromise* with Wilmington on October 13, 2023, and an *Amended Motion to Sell* the Property under 11 U.S.C. § 363(b) and (f), free and clear of interests. The proposed compromise gave Wilmington an allowed claim of $327,267.37 and a guaranteed payment from sale proceeds, with a "carve-out" of up to $64,187.00 to be distributed to unsecured creditors (D.D. 3:99–101; D.D. 3:84–95).

Prescott objected, arguing that Wilmington's recovery under the compromise far exceeded what was allowed under the *Final Judgment*—$206,887.32 plus statutory post-judgment interest—and that the compromise diverted equity that rightfully belonged to him as second lienholder (D.D. 3:106; D.C. Dkt. 119 2:111). He also noted that Wilmington was not a party to the appeal of the Foreclosure Judgment and therefore lacked standing to settle it (D.D. 3:122, Ex. A).

THPCP and BAMC filed objections to the sale, asserting that the Property was not property of the estate because THPCP had exercised its Option prepetition. They emphasized that Hyman had neither set aside the Option nor initiated any

proceeding to do so. The court nonetheless authorized the sale under § 363(f)(4), finding THPCP's interest in "bona fide dispute," and under § 363(f)(5), finding Prescott "could be compelled" to accept money satisfaction (D.D. 3:104–105; D.D. 3:111).

Prescott argued that there was no legal mechanism—such as foreclosure or condemnation—that would allow such extinguishment without his consent. The bankruptcy court rejected his position without analysis. The District Court affirmed without addressing the core legal arguments and authorities cited (D.D. 3:106; D.C. Dkt. 119 2:153, pp. 74–77).

### The Justice Oaks Ruling

In approving the compromise, the bankruptcy court applied the four *Justice Oaks* factors. Prescott objected that the Trustee lacked any equity in the Property, rendering any asserted benefit to the estate improper. He contended that Hyman was essentially "giving away" Prescott's property to benefit Wilmington and secure a carve-out, rather than pursuing abandonment under § 554, as required where estate assets are of inconsequential value (D.D. 3:84–95; D.C. Dkt. 119 2:153, pp. 73–88).

The bankruptcy court acknowledged that Wilmington's claim, even with post-judgment interest, totaled no more than $272,805.36. Nonetheless, it approved

the compromise at $327,267.37, despite no finding that Wilmington had incurred allowable fees post-judgment and no pending fee motion in the state court. The bankruptcy court found the compromise reasonable because unsecured creditors would "get nothing" absent the sale and carve-out (D.C. Dkt. 119 2:153, pp. 75–77).

Prescott also argued that the compromise violated Rule 3002 and § 502 of the Bankruptcy Code by effectively disallowing his lien without a claims objection or hearing, and that the record contradicted any assertion that Wilmington's claim would exceed the Final Judgment amount (D.C. Dkt. 119 2:111).

### Appeals and Consolidation

Appellants timely appealed the *Sale Order*, *Emergency Order*, *Amended Sale Order*, and *Compromise Order* to the District Court, which consolidated the appeals under Case No. 8:23-cv-2939 (D.D. 3:1; D.D. 3:141; D.D. 3:143). On March 11, 2025, the District Court entered an omnibus order affirming all rulings (D.D. 34). Appellants timely appealed to this Court on March 25, 2025.

## Summary of the Argument

A.     The District Court erred in upholding the *Emergency Order* and *Amended Sale Order*, both of which were entered without the notice and hearing required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Appellants' due process rights.

B.     The District Court erred in rejecting Appellants' arguments that: (i) the *Motion to Sell* was not properly served on THPCP or HPC as required by law; (ii) neither the *Motion* nor the notice of the October 30, 2023 preliminary hearing provided adequate notice that Appellants' property rights were at risk of being lost at that hearing.

C.     The District Court further erred in rejecting Appellants' contention that the *Motion to Sell* and the October 30, 2023 hearing notice failed to alert them that the hearing could result in the extinguishment of their rights.

D(i).  The District Court erred in affirming the bankruptcy court's authorization to sell the beneficial interest in the Property without first determining whether it was "property of the estate" under § 363(b).

D(ii). Even if such a determination had been made, the District Court erred in rejecting Appellants' argument that the beneficial interest was not "property of the estate" under Florida law and 11 U.S.C. § 541(d).

E.     The District Court erred in upholding the sale of the beneficial interest under § 363(h), despite it not being the type of co-ownership interest that can be sold without the non-debtor's consent.

F.     Even if the Court disagreed with Appellants on every other issue, it was still error to uphold the sale because final, unappealable orders in the THPCP bankruptcy had already transferred the beneficial interests in the Property to HPC and its assignee, 1802 Platt, before the auction in the BAMC case was even authorized.

G.     The District Court erred in affirming the sale free and clear of the Lease, despite Hyman having rejected—or being deemed to have rejected—the Lease under § 365(d), which precluded him from treating it as estate property.

H.     The District Court erred in affirming the sale without requiring adequate protection for the interests of Prescott, THPCP, and HPC, as mandated by § 363(e).

I.     The District Court erred in affirming the sale based on § 363(f)(4) and a finding of "bona fide dispute," despite no pending proceeding challenging Appellants' interests and no legal foundation for such a finding.

J.     The District Court further erred in concluding the sale could proceed under § 363(f)(5), despite the absence of any legal mechanism by which Prescott

could be compelled to accept less than full payment on his second mortgage.

K.      The District Court erred in rejecting Appellants' argument that the Trustee lacked any valid business justification for the sale, especially where there was no equity in the Property and the sale conferred a windfall on Wilmington at Prescott's expense.

L.      The District Court erred in concluding that the *Final Judgment of Foreclosure* was not "final" for purposes of the *Rooker-Feldman* doctrine, despite it having been affirmed on appeal years earlier.

M.      Finally, the District Court erred in affirming the compromise under the *Justice Oaks* factors, which were misapplied and failed to justify a settlement that stripped Prescott of his secured interest to benefit unsecured creditors and resolve a dispute to which Wilmington lacked standing.

**Argument**

<u>Standard of Review</u>

The standard of review for each issue raised in this appeal is *de novo* because it concerns a question or conclusion of law. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015); *Dixon v. U.S. Atty. Gen.*, 768 F.3d 1339, 1341 (11th Cir. 2014); and *In re Das A. Borden & Co.*, 131 F.3d 1459, 1462 (11th Cir. 1997).

<u>A.     The Bankruptcy Court Entered the *Emergency* and *Amended Sale Orders* Without the Notice and Hearing Required by Law, and the District Court Erred by Overlooking These Deficiencies</u>

Appellants argued in the *Emergency Order Appeal* (*Initial Brief*, pp. 26–31) that the *Emergency Order* and *Amended Sale Order* were entered without the notice and hearing required by 11 U.S.C. § 363 (b), and in violation of: (1) 11 U.S.C. § 102 (1)(A); (2) Fed. R. Bankr. P. 6004 (a), (c); (3) Fed. R. Bankr. P. 2002 (a)(2), (c)(1), (i), and (k); and (4) Fed. R. Bankr. P. 9014.

The District Court failed to address these statutory and rule-based arguments. Its opinion cited only § 102 (1)(A) in support of the conclusion that no hearing was required. However, § 102(1)(A) provides that the phrase "'after notice and a hearing'... means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." This language does not eliminate the notice-and-hearing

23

requirement; it clarifies its flexibility—not its absence.

The District Court also ignored the case law cited by Appellants in the *Initial Brief* demonstrating that the Orders were issued in violation of Appellants' due process rights.

Appellants further argued that even if a hearing is not always required under the Bankruptcy Code, Rules, or case law, one was required here because the modifications to the *Sale Order* were substantial and material in at least two respects.

First, the original *Sale Order* provided that the property would be sold "AS-IS/WHERE-IS, without warranties." In contrast, the *Emergency Order* and *Amended Sale Order* materially altered those terms by stating: (1) the sale would be free and clear of "potential defects in prior deeds"; and (2) the Trustee was authorized to execute "any deed" related to the sale. These changes significantly affected the legal status of the property and the rights of Appellants, including their ability to assert claims or objections. They also enabled the buyer to assert ownership free and clear of Appellants' interests, potentially inflating the sale price—benefiting Prescott as the holder of the Second Mortgage.

The District Court dismissed this argument in a single sentence, stating that the modifications did not affect Appellants' substantive rights and that no hearing

was required—again relying solely on § 102 (1)(A), without analysis.

Second, the amended orders substantially and materially modified the *Sale Order* by improperly invoking 11 U.S.C. § 363 (m) for the benefit of the successful and backup bidders, even though the original *Sale Order* did not include any reference to § 363(m). Section 363(m) shields good-faith purchasers from the consequences of a later reversal or modification of a sale order unless the sale was stayed pending appeal. Its invocation—especially without proper findings—can render an appeal moot.

The District Court correctly held that an appeal is not moot under § 363 (m) where no evidentiary finding of good faith was made by the bankruptcy court, citing *In re Fitzgerald*, 428 B.R. 872 (B.A.P. 9th Cir. 2010). The court noted that the bankruptcy court here made no such finding, and thus the § 363(m) safe harbor did not apply.

However, the District Court appeared to reason that because the bankruptcy court's intended invocation of § 363 (m) was ultimately ineffective, no notice or hearing was required. This is legal error. Whether a hearing is required turns not on whether the intended relief was proper or effective, but on whether such relief was sought and whether its grant would materially affect the parties' rights.

The *Emergency Motion* sought material relief, including § 363(m)

25

protections and expanded authority over the title and transfer of the property. That alone triggered the right to notice and an opportunity to be heard, regardless of whether the bankruptcy court's order ultimately succeeded in granting such relief.

This Court should find that the bankruptcy court committed reversible error by entering the *Emergency* and *Amended Sale Orders* without notice or hearing, in violation of § 363(b), the applicable Bankruptcy Rules, and Appellants' due process rights. Appellants respectfully refer the Court to Issue "A" in their *Initial Brief* (pp. 26–31) and *Reply Brief* (pp. 5–13) for further support.

B.   The Bankruptcy Court Entered the Sale Order Without Providing Proper Notice or an Opportunity to Be Heard, in Violation of Statutory, Procedural, and Constitutional Requirements

Appellants argued in the *Sale Order Appeal* (*Initial Brief*, pp. 26–32) that neither the *Motion to Sell* nor the notice of the October 30, 2023 preliminary hearing were properly served on THPCP or HPC, as required by: (1) 11 U.S.C. §§ 363 (b)(1) and 102 (1)(A); (2) Fed. R. Bankr. P. 6004 (a), (c); (3) Fed. R. Bankr. P. 2002 (a)(2), (c)(1), (i), and (k); (4) Fed. R. Bankr. P. 9014 and 7004; and (5) Fed. R. Bankr. P. 9006(d).

The District Court rejected this argument, holding that (A) THPCP had the opportunity to be heard because the bankruptcy court contacted Mr. Johnson during the hearing; and (B) THPCP's equity was represented by Mr. Meacham,

who appeared and purportedly advocated for THPCP's equity's interests. The District Court relied on 11 U.S.C. § 102(1)(A) to conclude that adequate notice and hearing were provided under the circumstances.

These findings are legally erroneous.

First, Mr. Johnson explicitly informed the bankruptcy court at the October 30 hearing that he was not authorized to represent THPCP's equity. He explained that THPCP's assets had been sold under a separate Rule 9019 compromise and that any remaining rights would transfer to the buyer following consummation of the sale. When the court asked whether he was in a position to support or oppose the sale, Mr. Johnson responded: "That's correct... we're in no position to approve or deny." (D.D. 3:154, pp. 35–37.) The court's reliance on Mr. Johnson's appearance as a substitute for proper notice and representation of THPCP's equity was therefore misplaced.

Second, the District Court's finding that Mr. Meacham represented THPCP's equity is similarly flawed. Although Mr. Meacham appeared, the bankruptcy court did not permit him to argue on behalf of equity. (D.D. 3:154.) Thus, THPCP's equity was not meaningfully heard.

Third, the bankruptcy court erred by refusing to hear argument from HPC on the basis that the *Welch Sale Order* had not yet become final. The court incorrectly

relied on Mr. Johnson's statement that the order would become final "at the end of today." The court failed to consult the *Welch Sale Order* itself, despite having it readily available and despite the best evidence rule. Had the court reviewed the order, it would have seen that the 14-day stay under Rule 6004(h) was waived and that HPC had standing to be heard at the hearing.

The District Court adopted this flawed reasoning, holding that HPC had no right to notice or to be heard because it had not yet acquired an interest in the property. That conclusion was legally incorrect. HPC's interest—though not yet fully vested—was sufficiently concrete to entitle it to notice, particularly given that the sale directly affected its rights under the *Welch Sale Order*. The District Court compounded its error by concluding that HPC's anticipatory interest was insufficient to merit notice, ignoring the principle that due process protections extend to parties with substantial, identifiable interests that will be directly affected.

The District Court also rejected Appellants' reliance on *In re MMH Auto. Grp., LLC*, 385 B.R. 347 (Bankr. S.D.Fla. 2008), misreading it as supporting a denial of relief. In fact, *MMH Auto* holds the opposite: when a sale order is entered without notice to an affected party, the appropriate remedy is to void the portion of the order that violates that party's due process rights. There, the court preserved the

sale but required compensation for the party whose leasehold interest had been compromised without notice. The same equitable remedy should have been applied here.

Instead, the District Court "balanced" HPC's rights against those of the "auction purchaser" and upheld the *Sale Order*. That analysis was flawed in two critical respects.

First, there was no auction purchaser: neither the highest bidder, RBC Investments, LLC, nor the backup bidder, David Nix, ultimately acquired the property. Instead, the purchaser was 212 Fremont LLC—an entity formed after the auction closed and never approved by the bankruptcy court under § 363.

Second, the District Court also erroneously concluded that HPC received actual notice through Mr. Hannouche, who manages both THPCP and HPC. But HPC was not permitted to participate at the hearing, and notice to Mr. Hannouche in his THPCP capacity does not satisfy due process for HPC as a separate entity.

The District Court further speculated that, even if HPC had been permitted to participate, it likely could not have established that the option interest was not in bona fide dispute under § 363(f)(4). That finding is speculative, unsupported by evidence, and irrelevant to the legal issue of whether HPC had the right to notice and an opportunity to be heard.

For these reasons, the bankruptcy court's failure to properly serve and hear THPCP and HPC violated their due process rights, as well as the applicable statutes and rules. The District Court's affirmance of the Sale Order rested on a series of legal and factual errors, including misapplication of § 102 (1)(A), misinterpretation of *MMH Auto*, and reliance on nonexistent facts regarding the buyer and notice.

This Court should reverse and hold that the bankruptcy court erred for the reasons stated above, as well as those set forth in Issue "A" of Appellants' *Initial Brief* (pp. 26–32) and *Reply Brief* (pp. 3–8).

## C.  The Motion to Sell and Notice of Hearing Did Not Provide Appellants with Adequate Notice That Their Property Rights Were at Risk

Appellants argued in Issue "A" of their *Initial Brief* (pp. 26–32) and *Reply Brief* (pp. 3–8) that neither the Motion to Sell nor the notice of the October 30, 2023, preliminary hearing adequately informed them that their property or property rights were at risk of being lost at that hearing. The Motion to Sell gave no clear indication that Appellants' interests could be extinguished, and the notice of hearing failed to alert them that such relief would be considered or granted at a preliminary stage.

Despite these clear arguments, the District Court separated this issue from the broader notice and due process arguments raised in Issue "A," and

mischaracterized it as a bare allegation in paragraph 13 of the *Initial Brief*—namely, that "the allegations in paragraphs 62 to 68 of the Motion to Sell are materially false, and do not provide a legal basis for setting aside anything." The District Court dismissed the argument on the grounds that Appellants "make no argument as to this asserted issue on appeal" and that the statement was a "bald assertion" insufficient to meet Appellants' burden.

This was legal error. Appellants clearly and repeatedly argued that the sale-related filings failed to give them adequate and constitutionally sufficient notice of the deprivation of their rights. That Mr. Hyman, the opposing party, correctly summarized Appellants' position in his *Answer Brief* as being that "the notice was not sufficient to inform them that they could lose their property and property rights at a hearing" confirms that the argument was presented with clarity.

The District Court's misreading of the briefing deprived Appellants of meaningful review of this central due process claim. The record demonstrates that the preliminary hearing on October 30 was used to approve substantive relief affecting Appellants' rights—relief not reasonably disclosed in either the *Motion to Sell* or the hearing notice. That procedural failure violated both statutory requirements and fundamental fairness.

This Court should find that the bankruptcy court committed reversible legal

error for the reasons set forth above and in Issue "A" of Appellants' Initial and Reply Briefs in the Sale Order Appeal.

D(i).  The Bankruptcy Court Erred by Authorizing the Sale Without Determining That the Interest Was Property of the Estate as Required by 11 U.S.C. § 363(b)

Appellants argued in Issue "B" of their *Initial Brief* (pp. 32–33) and *Reply Brief* (p. 8) that the bankruptcy court committed legal error by authorizing the sale of a beneficial interest in the Property without first determining that the interest was "property of the estate," as expressly required by 11 U.S.C. § 363 (b). Section 363(b) permits a trustee to "use, sell, or lease, other than in the ordinary course of business, <u>property of the estate</u>" (emphasis added). This limitation is fundamental.

Appellants supported their position with case law holding that § 363 (b) applies only to estate property. *In re McIntyre*, Case No. 10-30570-WRS (Bankr. M.D. Ala. Dec. 23, 2014) (sale denied where the asset was not estate property); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[w]hen a proposed use, sale, or lease of assets is outside the ordinary course of business, § 363(b) requires that the assets be property of the estate").

The District Court rejected this argument without addressing either *McIntyre* or *Continental Air Lines*. Instead, it reasoned that: (A) § 363(b)(1) required Trustee Hyman—rather than the court—to determine whether the property was estate property; and (B) a judicial determination was unnecessary as long as the interest

sold was "an interest in property that was property of the estate."

That reasoning is legally erroneous.

First, § 363(b)(1) does not empower the trustee to unilaterally determine whether property is part of the estate. That question is a legal one, committed to the bankruptcy court. The trustee's belief or assertion cannot substitute for a judicial finding—especially where, as here, the property rights of non-debtors are at stake.

Second, the District Court's conclusion that the Option interest could be treated as estate property merely because it was "an interest in property that was property of the estate" finds no support in the Bankruptcy Code and is inconsistent with controlling authority.

In particular, 11 U.S.C. § 541(d) provides that property in which the debtor holds only legal title, but no equitable interest, becomes property of the estate only "to the extent of the debtor's legal title... but not to the extent of any equitable interest in such property that the debtor does not hold." This provision directly undermines the District Court's assumption that any interest touching estate property may be sold under § 363.

Moreover, the District Court's own cited authority—*Smith v. Slott*, 683 F. Supp. 3d 1331, 1345 (S.D. Fla. 2023)—emphasizes that property rights must be clearly established under § 541 before a court can authorize a sale under § 363. No

such determination was made here.

The bankruptcy court authorized the sale without making a threshold finding that the Option interest was property of the estate, as required by law. The District Court erred in affirming that decision, particularly while disregarding directly relevant authority and statutory text.

This Court should reverse and find that the bankruptcy court committed legal error, as argued in Issue "B" of Appellants' *Initial* and *Reply Briefs* in the *Sale Order Appeal*.

### D(ii). The Bankruptcy Court Erred in Authorizing the Sale Because the Property Was Not Property of the Estate Under § 541(d)

In Issue "C" of their *Initial Brief* (pp. 33–36) and *Reply Brief* (pp. 9–12) in the *Sale Order Appeal*, Appellants argued that the bankruptcy court committed legal error by authorizing the sale of the beneficial interest in the Property when it was not "property of the estate" under 11 U.S.C. § 541(d). The record established the following:

A.      THPCP exercised its purchase option pre-petition, thereby terminating the lease and becoming the equitable owner of the Property under Florida law. *See, Pensacola Wine & Spirits Distillers, Inc. v. Gator Distributors, Inc.*, 448 So. 2d 34, 35 (Fla. 1st DCA 1984) ("a lease is terminated when an option to buy is exercised; the vendee then becomes an equitable owner") (citing *Atlantic Beach Improvement*

*Corp. v. Hall*, 143 Fla. 778, 197 So. 464 (1940)).

B.     Under § 541(d), BAMC's estate acquired only legal title—no equitable interest. The statute expressly excludes from the estate any equitable interest the debtor did not hold as of the petition date.

C. Even if the purchase agreement had been rejected, 11 U.S.C. § 365(i) would entitle THPCP (or its assign) to remain in possession and compel transfer of the Property under the terms of the exercised Option. THPCP was and remains in possession.

The District Court, however, failed to address or analyze any of these arguments. Instead, it upheld the sale based on two erroneous premises: (A) that § 363 (f) authorized the sale of the Property free and clear of a non-debtor's interest, citing *Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 544 (2d Cir. 2003) and (B) that the court need not determine whether the Option interest was itself estate property, as long as it was "an interest in property that was property of the estate."

This reasoning is legally flawed.

First, *Precision Industries* involved a lessee's possessory interest, not equitable ownership arising from the exercise of a purchase option. That distinction is critical: here, the lease had already been terminated pre-petition by the exercise

35

of the Option, and THPCP became the equitable owner under settled Florida law. The property interests at issue in *Precision Industries* do not match those present here.

Second, § 541(d) forecloses any claim that the equitable ownership interest became property of the estate. That section provides that if the debtor holds only legal title to property, it enters the estate "only to the extent" of that title—not the equitable interest. The District Court's interpretation that a general "interest in property" suffices under § 363 (b) improperly disregards this statutory limitation.

Third, the District Court ignored the legal implications of § 365(i), which protects vendees like THPCP who are in possession following rejection of an executory real estate purchase agreement. That provision prohibits the trustee from interfering with possession and obligates the estate to transfer title consistent with the agreement.

Moreover, the District Court's reliance on *Smith v. Slott*, 683 F. Supp. 3d 1331, 1345 (S.D. Fla. 2023), is misplaced. That case reinforces that a bankruptcy court must evaluate whether the estate actually holds the interest to be sold, particularly where equitable title lies with a non-debtor.

By failing to address these controlling legal principles and facts, the District Court affirmed a sale order that unlawfully divested Appellants of their equitable

property interest—an interest that was never part of the estate to begin with.

This Court should find that the bankruptcy court committed reversible legal error, as set forth above and in Issue "C" of Appellants' *Initial* and *Reply Briefs* in the *Sale Order Appeal*.

E.    The Bankruptcy Court Erred in Authorizing the Sale of the Beneficial Interest Because It Is Not the Type of Interest That Can Be Sold Under § 363(h)

In Issue "D" (*Initial Brief*, p. 36; *Reply Brief*, p. 13), Appellants argued that the bankruptcy court lacked authority under 11 U.S.C. § 363 (h) to authorize the sale of THPCP's or HPC's beneficial interest in the Property, because such interest is not the type of co-ownership governed by § 363(h). which is limited to "an undivided interest as a tenant in common, joint tenant, or tenant by the entirety" with a debtor.

The District Court rejected this argument, reasoning that: (A) Section 363(h) did not apply because the Debtor owned the Property in fee simple and did not share legal title with a tenant in common, joint tenant, or tenant by the entirety; (B) THPCP's and HPC's asserted equitable interest in the Property did not meet the statutory definition of co-ownership under § 363(h); and (C) the Trustee could sell the interest under § 363(f) without needing to satisfy § 363(h), citing *Smith v. Slott*, 683 F. Supp. 3d 1331, 1345 (S.D. Fla. 2023).

The District Court's conclusion misreads both the statute and *Smith v. Slott*,

and thus constitutes legal error.

First, *Smith v. Slott* confirms the principle advanced by Appellants. Section 363(h) defines the limited types of co-ownership—joint tenancy, tenancy in common, and tenancy by the entirety—that bring a non-debtor's interest within the court's jurisdiction for sale. The court in *Smith v. Slott* expressly noted that this list excludes the kind of equitable interest THPCP holds here. Indeed, the District Court in this case even acknowledged that THPCP's equitable interest and BAMC's legal title do not constitute "simultaneous legal interests" under § 363(h). See *DC Order* at 38.

Second, *Smith v. Slott* is distinguishable. That case addressed whether a non-debtor's legal interest could be sold with consent under § 363(f)(2), not whether an equitable ownership interest—outside the scope of § 363(h)—could be sold over objection under § 363(f)(4). Nothing in *Smith v. Slott* suggests that § 363(f)(4), which permits sales "free and clear" of interests that are subject to bona fide dispute, can override § 363(h)'s limitations on what types of non-debtor interests may be involuntarily sold.

Here, neither THPCP nor HPC consented to the sale. Thus, even if the Trustee could theoretically proceed under § 363(f), the express limitations of § 363(h) remain controlling where the estate seeks to divest a non-debtor of its

38

beneficial ownership interest without consent and outside the statutorily defined co-ownership categories.

Accordingly, the bankruptcy court exceeded its authority in authorizing the sale of THPCP's or HPC's beneficial interest in the Property, and the District Court erred in affirming that sale.

This Court should reverse and hold that § 363(h) bars the sale of the beneficial interest under these circumstances, for the reasons stated in Issue "D" of Appellants' *Initial* and *Reply Briefs*.

F. The Bankruptcy Court Erred in Allowing the Sale of Appellants' Equitable Interest in the Property Without Addressing the Preclusive Effect of the Prior Final Orders in the THPCP Case

In Issue "E" (*Sale Order Appeal Initial Brief*, pp. 37–39; *Reply Brief*, pp. 13–14), Appellants argued that Trustee Hyman lacked authority to sell THPCP's or HPC's equitable interest in the Property—not merely because of res judicata or collateral estoppel in the abstract, but because that interest had already been conclusively adjudicated and transferred under final, unappealed orders in the THPCP bankruptcy case. The District Court mischaracterized and narrowed Appellants' argument into a generic question—whether Trustee Hyman's request to sell the interest was "precluded by res judicata, collateral estoppel, or both"—and in doing so, failed to engage with the substance of the argument presented.

Appellants' contention is not simply that Hyman's request was precluded. Rather, it is that his claim to sell the equitable interest in the BAMC case was jurisdictionally and substantively barred by final, binding orders in the THPCP case that became unappealable before the auction in the BAMC case was even authorized.

Specifically, Hyman claimed to sell the Property free and clear of Appellants' equitable interest. Appellants maintain that Hyman never sold their interest at all. Rather, the equitable interest remained intact, and the Property was sold subject to it, consistent with § 365(i) and 11 U.S.C. § 541(d).

Even if Hyman had a plausible legal theory to sell that interest, the final sale orders entered in the THPCP case—specifically, the *Welch Sale Order* and *Welch Compromise Order*—became final and unappealable at 12:01 a.m. on October 31, 2023, before any order was entered in the BAMC case authorizing an auction (which occurred on November 6, 2023).

As a result, any equitable interest Hyman may have claimed was extinguished in the THPCP case before it could be offered for sale in the BAMC case.

These facts, taken together, demonstrate that Hyman had no beneficial interest in the Property to sell—nor any valid claim to such an interest. Therefore,

under well-established principles of *res judicata*, collateral estoppel, and finality of judgments, he was barred from asserting otherwise. *See, e.g.*, *Nilhan Dev., LLC v. Glass (In re Nilhan Dev., LLC)*, 631 B.R. 507, 534 (Bankr. N.D. Ga. 2021) ("[t]he ownership of the Property has been determined by the Court in its Second Sale Order… [and] is barred by issue preclusion"); *Bush v. Balfour (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995); *In re Moore-McKinney*, 603 B.R. 855, 865 (Bankr. N.D. Ga. 2019).

The District Court erred by failing to address these arguments or the supporting case law, and instead disposed of the issue through a mischaracterization that ignored the timing, legal consequences, and preclusive effects of final orders in the THPCP case.

Accordingly, this Court should find that the bankruptcy court committed legal error for the reasons stated in Issue "E" of Appellants' *Initial* and *Reply Briefs*, and reverse.

G.    The Bankruptcy Court Erred in Authorizing the Sale of the Lease or Any Leasehold Interest in the Property Post-Rejection, in Violation of 11 U.S.C. §§ 363 and 365, and Established Case Law

In Issue "F" (*Initial Brief* at pp. 39–41; *Reply Brief* at pp. 14–15), Appellants argued that—even if the Lease between THPCP and BAMC had not been terminated pre-petition by exercise of the Option—Trustee Hyman had no

authority to sell, assume, assign, cancel, or otherwise treat the Lease as property of the estate following its rejection under 11 U.S.C. § 365(d).

Hyman claims that he either rejected or is deemed to have rejected the Lease by operation of law for failure to assume it within 60 days after conversion of the BAMC case to Chapter 7. Once rejected, the Lease ceased to be estate property, and the trustee had no authority under 11 U.S.C. § 363 to sell it or the lessee's rights under it.

Rejection does not terminate the lease or eliminate the lessee's rights. *In re Scharp*, 463 B.R. 123, 129–32 (Bankr. N.D. Ill. 2011); *In re Miller*, 282 F.3d 874, 878 (6th Cir. 2002). Rejection simply removes the lease from the estate, reverting rights to the lessee. *Scharp*, 463 B.R. at 129 (citing *In re Rosenfeld*, 23 F.3d 833, 839 (4th Cir. 1994)); *In re Provider Meds, LLC*, 907 F.3d 845, 859 (5th Cir. 2018). Under § 365(h), lessees may retain their full rights of possession, use, and enjoyment notwithstanding rejection.

The District Court failed to address any of the arguments or case law advanced by Appellants. Rather, the District Court misapplied reasons and authorities inapposite under the facts and under the law, erroneously concluding:

A.      Rejection had "no effect" on the trustee's ability to sell the Property free and clear of the lessee's interest under § 363(f);

B.     The lessee's possessory interest qualified as an "interest" under § 363(f);

C.     Trustees may sell estate property free and clear of lease interests under § 363(f), citing *In re MMH*, 385 B.R. at 347; and

D.     *Precision Industries*, 327 F.3d 537, allowed such sales.

Each of these conclusions was in error.

*Precision Industries* did not involve rejection or deemed rejection and is irrelevant to the issue of whether a trustee may sell a lease interest post-rejection. *In re MMH* involved a *non-residential lease* where the debtor was the *lessor*—not the lessee—and explicitly stated that "[r]ejection doesn't terminate a lease," thus supporting Appellants' argument, not refuting it.

The assertion that rejection has "no effect" ignores binding statutory text and controlling case law across multiple circuits holding that once rejected, a lease is no longer part of the estate and cannot be administered or sold by the trustee.

Moreover, § 365(h) guarantees the lessee the right to remain in possession and enjoy all leasehold rights post-rejection. The trustee cannot strip those rights via sale under § 363(f), particularly without the lessee's consent.

Accordingly, the District Court erred by misstating the legal consequences of rejection under § 365 and by misapplying authorities that do not address or govern

those consequences. The Lease, once rejected, exited the estate and could not be sold, assumed, or modified through a sale process.

This Court should find and rule that the bankruptcy court committed legal error for the reasons stated in Issue "F" of the *Initial* and *Reply Briefs* and reverse.

## H. The Bankruptcy Court Erred in Ordering the Sale of the Property Without Providing Adequate Protection of Appellants' Property Interests as Required by 11 U.S.C. § 363(e)

In Issue "G" (*Initial Brief* at pp. 41–42; *Reply Brief* at pp. 15–18), Appellants argued that the bankruptcy court committed legal error in authorizing the sale of the Property under 11 U.S.C. § 363(b) without providing the mandatory adequate protection required under 11 U.S.C. § 363(e) for the interests of Prescott, THPCP, and HPC, each of whom held a legally cognizable interest in the Property.

Specifically, Appellants contended that:

(A)    Prescott's right of redemption under Florida law—established by a Final Judgment entered August 21, 2018—entitled him to redeem the Property by paying $206,887.32 plus interest and recover all proceeds in excess of Wilmington's lien;

(B)    THPCP's beneficial ownership interest, arising from its pre-petition exercise of the Option to purchase, was entitled to adequate protection; and

(C)    HPC and its assignee, 1802 Platt, acquired a beneficial interest in the

Property through the final, non-appealable *Welch Sale Order* and *Welch Compromise Order*, which required recognition of their rights under § 363(b).

The District Court failed to address much of the argument. It did not address at all Appellants' contention that Prescott's vested redemption rights under state law were disregarded.

Further, it summarily affirmed the bankruptcy court's finding that Prescott received adequate protection via a "replacement lien on the proceeds of the sale," but failed to explain how this replacement lien equated in "extent, validity, and priority" to Prescott's existing mortgage rights and redemption entitlement under the Final Judgment. A lien on uncertain proceeds is not equivalent to the concrete foreclosure rights guaranteed under Florida law.

As to THPCP and HPC, the District Court erroneously concluded that they were not entitled to adequate protection because: (A) the Option interest was not a secured lien and "unsecured creditors are generally not entitled to adequate protection," citing *In re R.F. Cunningham & Co.*, 355 B.R. 408 (Bankr. E.D.N.Y. 2006) and *In re SunEdison, Inc.*, 562 B.R. 243 (Bankr. S.D.N.Y. 2017); and (B) the sale was proper under § 363(f) because the Option interest was the subject of a genuine dispute.

These conclusions are legally flawed.

Section 363(e) mandates that *any* entity with an interest in property is entitled to adequate protection upon request. It is not limited to lienholders or secured creditors. Beneficial owners—like THPCP and HPC—have legally cognizable property interests and were entitled to § 363(e) protection.

Even assuming the Option interest was disputed, no authority permits the sale of a non-debtor's ownership interest under § 363(f)(4) (bona fide dispute) *without either the non-debtor's consent under § 363(f)(2)* or the interest being of a type that can be sold under § 363(h)—neither of which was present here.

Further, the District Court's reliance on *R.F. Cunningham* and *SunEdison* is misplaced, as those cases involved general unsecured creditors, not parties with equitable ownership or a right to redemption.

By allowing the sale to proceed without protecting the real, enforceable, and vested interests of Appellants, both the bankruptcy court and the District Court violated 11 U.S.C. § 363(e) and established case law, and deprived Appellants of their rights without due process or statutory justification.

This Court should reverse and hold that the sale violated § 363(e) for failing to provide adequate protection of Appellants' interests as required by law for the reasons stated above and in Issue "G" of the *Initial Brief* (pp. 41-42) and *Reply Brief* (pp. 15-18).

I.   The Bankruptcy Court Committed Legal Error by Relying on 11 U.S.C. § 363(f)(4) and a Finding of Bona Fide Dispute to Justify Sale of Property Over Appellants' Objection

In Issue "H" (*Initial Brief* at p. 43; *Reply Brief* at pp. 18–19), Appellants argued that the bankruptcy court improperly relied on 11 U.S.C. § 363(f)(4)— which allows sale "free and clear" of an interest that is the subject of a "bona fide dispute"—to authorize the sale of the Property over the objections of THPCP and HPC, despite the fact that the beneficial ownership interests at issue were not property of the estate and could not be sold under § 363.  Appellants argued:

A.   Selling the Property "free and clear" of THPCP's and HPC's beneficial interests was, in substance, a sale of those interests themselves, and thus not merely a transfer of estate property;

B.   The bankruptcy court never found, and could not properly find, that the beneficial interest in the Property was "property of the estate" under § 541—a statutory prerequisite for sale under § 363(b);

C.   Under both Florida law and § 541, the beneficial interest belonged to THPCP, based on its pre-petition exercise of the Option to purchase, which terminated the lease and vested THPCP with equitable title; and

The interests at issue were not of the type that can be sold without the owner's consent under § 363(h), which is limited to undivided co-ownership

interests (e.g., tenancies in common or joint tenancy).

The District Court failed to directly address these arguments, except to state that Appellants' argument about non-estate property was addressed elsewhere—an assertion Appellants contend was itself legally erroneous for reasons discussed *supra*.

Instead, the District Court adopted the bankruptcy court's finding that the Option interest was in bona fide dispute for the following reasons: (A) there was no evidence the lease containing the Option was assigned to the Debtor; (B) THPCP was allegedly in breach of the lease when it exercised the Option; (C) the Option was conditional upon THPCP's full performance; and (D) the Trustee may have been able to avoid the Option exercise under § 544(a).

These conclusions are legally and factually deficient. First, there is no record evidence establishing that THPCP was in breach of the lease. Second, BAMC never alleged breach, and in fact accepted a $20,000 payment from THPCP as consideration for the Option exercise, thereby waiving any alleged breach. Finally, by the Trustee under § 544(a) or any other clawback provision. No proceeding was initiated to challenge the validity or enforceability of THPCP's beneficial ownership—yet the court authorized the sale as though such a challenge had been successfully litigated.

No true "bona fide dispute" existed, and the court's reliance on § 363(f)(4) was legally erroneous. That provision requires an *actual*, *substantiated* dispute—not a hypothetical or speculative one.

Accordingly, the bankruptcy court's order—and the District Court's affirmance—violated § 363(b), (f), and (h), and deprived Appellants of property rights in contravention of the Bankruptcy Code.

This Court should find and rule that the bankruptcy court committed legal error for the reasons stated above, in Issue "H" of the *Initial Brief* (p. 43) and *Reply Brief* (p. 18-19).

J.   The Bankruptcy Court Committed Legal Error in Applying 11 U.S.C. § 363(f)(5) to Authorize the Sale of the Property Free and Clear of Prescott's Interest Without Establishing a Valid Legal Mechanism to Compel Acceptance of a Monetary Satisfaction

In Issue "I" (*Initial Brief* at pp. 44–45; *Reply Brief* at pp. 19–22), Appellants argued that the bankruptcy court erroneously invoked 11 U.S.C. § 363(f)(5) to authorize the sale of the Property free and clear of Robert Prescott's interest, based on a conclusory and unsupported finding that Prescott "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." This ruling is contrary to the statutory text and well-established case law interpreting § 363(f)(5).

For § 363(f)(5) to apply, the trustee must identify a legal or equitable

mechanism that permits lien extinguishment without full satisfaction of the secured claim, such as foreclosure, condemnation, a liquidated damages clause, or similar legal construct. See, e.g., *In re PW, LLC*, 391 B.R. 25, 43–45 (9th Cir. BAP 2008); *In re Terrace Chalet Apartments, Ltd.*, 159 B.R. 821, 829–30 (N.D. Ill. 1993); *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002). Full payment is not always required, but some independent, established legal mechanism must exist through which the interest holder could be compelled to accept less than full monetary satisfaction. *In re PW, LLC*, 391 B.R. at 43. In addition, the court must make a specific factual finding supporting the existence and applicability of that mechanism in the given case. *Id.* at 45 (*quoting In re Terrace Chalet Apts.*, 159 B.R. at 829-830).

The District Court ignored this authority and did not address Appellants' argument or the controlling case law. Instead, it simply affirmed the bankruptcy court's conclusory finding that Prescott could be compelled to accept money in a state court action to enforce the promissory note against the obligor, Scott, without identifying the legal proceeding that would support such compulsion; addressing how that proceeding could operate to extinguish Prescott's lien rights without full satisfaction; or explaining how such a mechanism would satisfy § 363(f)(5) under the applicable standard.

This superficial treatment is insufficient. Prescott's interest is a second mortgage secured by the Property and established by a final judgment entitling him to recover all amounts exceeding Wilmington's priority claim of $206,887.32 plus interest. Neither the bankruptcy court nor the District Court identified any legal mechanism—much less one that is "available" in this case—that would allow a court to extinguish Prescott's mortgage rights without full satisfaction, as § 363(f)(5) requires.

As such, both courts erred in authorizing the sale free and clear of Prescott's interest under § 363(f)(5) without the required factual and legal foundation. Simply pointing to a hypothetical state court contract enforcement action against a third party (Scott) does not satisfy the statute, as it neither compels satisfaction of the lien itself nor provides a means for extinguishing it.

The District Court's affirmance of the bankruptcy court's application of § 363(f)(5) was error. Accordingly, this Court should reverse the bankruptcy court's order for the reasons stated above and in Issue "I" of the *Initial Brief* (pp. 44-45) and *Reply Brief* (p. 19-22).

K.     The Bankruptcy Court Erred in Approving the Sale Without a Valid Business Justification Under 11 U.S.C. § 363(b)

Appellants argued, in Issue "K" (*Initial Brief* at pp. 47-53; *Reply Brief* at pp. 23-26), that the bankruptcy court erred by authorizing the sale of the Property under 11 U.S.C. § 363(b) without any legitimate business justification.

The law is clear: a trustee may not sell estate property outside the ordinary course of business without "an articulated business justification." *In re Continental Air Lines, Inc.*, 780 F.2d at 1226; *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Matter of Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S. D. Ohio 1984); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010).

Appellants showed that no such justification exists here.

First, there is no equity to benefit the estate.  The Property is encumbered by liens totaling at least $860,000, yet the *Sale Order* allows a sale for as little as $390,000. With no equity to benefit unsecured creditors, there is no legitimate reason to sell rather than abandon the Property under § 554. See *In re McIntyre*, Case No. 10-30570-WRS (Bankr. M.D. Ala.) ("Where there is no equity in the property to benefit the estate, the property should be abandoned."); *In re Payne*, 512 B.R. 421, 427 (Bankr. E.D.N.Y. 2014).

Second, the sale improperly transfers a non-estate interest.  The sale and related compromise attempt to transfer Prescott's interest in the Property to benefit

Wilmington and the estate. This mirrors the misconduct in *In re McIntyre*, where the trustee attempted to "give away" secured creditor BB&T's interest to settle an adversary proceeding—an "abuse of the Trustee's powers." The same abuse is present here.

Third, in this case, the "compromise" was not a valid justification. The proposed "business justification" is a carve-out from Wilmington conditioned on transferring Prescott's interest. But the "dispute" supposedly being compromised was a state court appeal between Wilmington's predecessor and Prescott. Hyman had no equity in the Property and no standing to settle that dispute. The sale and compromise merely facilitate a favorable result for Wilmington and a windfall to Hyman—at Prescott's expense.

Finally, Hyman breached fiduciary duties owing to Prescott by filing the *Motion to Sell*, and *Motion to Compromise*, which are designed to take property away from Prescott and give it to Hyman and Wilmington. By pursuing the sale and compromise, Hyman breached fiduciary duties owed to Prescott and violated bankruptcy's core principles of preserving estate property and ensuring equal treatment of similarly situated creditors. See, *In Re Schimmelpenninck*, 183 F.3d 347, 354 (5th Cir.1999) (discussing "the general bankruptcy policies of . . . preserving the debtor's property and ensuring equal distribution of the debtor's

assets to similarly-situated creditors").

The District Court did not address or discuss any of these arguments or relevant case law. It upheld the sale on the sole basis that "the compromise guaranteed the estate would receive the Carve-Out." This reasoning is legally flawed. A carve-out funded by transferring a third party's property interest cannot constitute a valid business justification, particularly where the estate has no equity and the trustee is simply redistributing value from one non-debtor to another.

The bankruptcy court committed legal error by approving a sale that lacked any sound business reason, improperly transferred a non-debtor's interest, and violated the trustee's fiduciary duties. This Court should reverse for the reasons stated above and in Issue "K" of Appellants' *Initial* and *Reply Briefs*.

L. The Bankruptcy Court Erred in Finding the Final Judgment Non-Final Under *Rooker-Feldman*

In Issue "C" of their *Initial Brief* (pp. 37–38) and *Reply Brief* (pp. 20–23) in the *Compromise Order Appeal*, Appellants argued that the bankruptcy court committed legal error in ruling that the *Final Judgment* was not "final" for purposes of the Rooker-Feldman doctrine. The record shows otherwise.

First, the *Final Judgment* is undisputedly final. The *Final Judgment* was entered on August 21, 2018. It was appealed on September 20, 2018, affirmed by the Florida Second District Court of Appeal, and a Mandate issued on January 28,

2020. Thus, the *Final Judgment* had been final for over 3 years and 10 months by the time the bankruptcy court ruled on November 30, 2023, that *Rooker-Feldman* did not apply because "*Rooker-Feldman* does not apply to judgments on appeal."

Further, the bankruptcy court's rationale was not only factually but also legally flawed. The bankruptcy court acknowledged the judgment's finality in part, stating that Judge Bergmann had merely denied a post-judgment request to add claims that arose later, finding it too late to amend the original judgment. Nonetheless, it ruled that the *Final Judgment* was non-final solely because of the pending appeal of that denial—a procedurally unrelated issue. Appellants emphasized, and Hyman cited no authority to the contrary, that a final judgment does not become "non-final" simply because a later post-judgment motion is denied and appealed. In fact, a final order cannot revert to non-final status under any circumstances for purposes of *Rooker-Feldman*, which bars federal review of final state court judgments.

The District Court's ruling repeats the same legal error. The District Court affirmed the bankruptcy court without addressing any of Appellants' arguments or the procedural history demonstrating finality. It merely concluded that: (A) "the state court appeal of the Foreclosure Judgment was pending," and (B) "the state proceedings had not ended."

But those findings are incorrect. The foreclosure judgment itself was final and affirmed years earlier. The only "pending" matter was a collateral post-judgment appeal that does not disturb or alter the finality of the original judgment for *Rooker-Feldman* purposes.

Because the *Final Judgment* had long been affirmed and finalized, and because no legal authority supports reclassifying it as "non-final" due to a later appeal of an unrelated denial, both the bankruptcy court and the District Court committed legal error. This Court should reverse for the reasons stated in Issue "C" of Appellants' *Initial* and *Reply Briefs* in the *Compromise Order Appeal*.

## M.  The Bankruptcy Court Erred in Applying the *Justice Oaks* Factors

In Issue "D" of their *Initial Brief (*pp. 38–46) and *Reply Brief* (pp. 24–29) in the *Compromise Order Appeal*, Appellants argued that the bankruptcy court misapplied the *Justice Oaks* factors in approving the Compromise. Each factor weighed against approval or, at minimum, was misanalyzed.

## First Factor (the probability of success in the litigation):

Appellants argued the court erred in finding this factor favored the Compromise because it appeared that Hyman rather than MTGLQ had the higher probability of success in the litigation:

(A)    Hyman had no equity in the Property and was obligated to abandon it

under 11 U.S.C. § 554;

(B)    But for his obligations to abandon the Property, he could have simply waited for a favorable ruling from the Second District Court of Appeal rather than pursuing a compromise;

(C)    The bankruptcy court's statement that "all Judge Bergmann did really was deny a reopening of the judgment to add things that occurred post-judgment and he determined was too late to add for pre-judgment" supports, if true, an opinion that is favorable to Hyman since MTGLQ would be unable to show factual or legal error in such ruling;

(D) Appellants never disputed that post-judgment interest accrues; in fact, counsel expressly agreed at the November 30, 2024 hearing that, at minimum, Wilmington's entitlement was $272,805.36; and,

(E) The Final Judgment clearly provides for post-judgment interest, and, MTGLQ's appeal lacked merit, further supporting a favorable outcome for Hyman.

The District Court ignored these points and focused only on Appellants' statement that "Wilmington is not a party to the appeal and has a 0% chance of prevailing." It erroneously found otherwise, misreading the record.

Second Factor (Difficulty of Collection):

Appellants argued this factor should have been neutral, not supportive of the

Compromise:

- Hyman was not collecting any funds and had no equity in the Property; and,

- Under § 554, he should have abandoned it.

The District Court disagreed, relying on the bankruptcy court's conclusion that without the compromise, the estate would receive nothing, and that any recovery for unsecured creditors depended entirely on the compromise.

Appellants counter that this rationale is flawed because the estate lacked equity to distribute in the first place. The court's finding was unsupported and constitutes legal error.

<u>Third Factor (Complexity of the Litigation)</u>:

Appellants agreed the appeal was not complex but challenged the court's reliance on delay and expense as justification. Delay alone cannot justify approving a compromise; otherwise, this factor would always weigh in favor. Further, the appellate issues were straightforward, and MTGLQ had already filed its Initial Brief. The appeal would have likely concluded had Wilmington and Hyman not intervened to pause it. Finally, Wilmington's expenses were irrelevant because it was not a party to the appeal and thus had no chance of recovering fees.

The District Court upheld the bankruptcy court's ruling by incorrectly assuming Wilmington was a party and cited delay and expenses that were

inapplicable.

Fourth Factor (Paramount Interests of Creditors):

Appellants argued that the bankruptcy court misapplied this factor and unlawfully disadvantaged Prescott.

The court said it had "never taken away lienholder equity" yet did exactly that by approving a compromise that stripped equity from Prescott's second mortgage.

The court suggested Prescott might be "just an unsecured creditor" or was "likely to be a loser anyway", despite no adjudication of his claim under proper procedures.

The bankruptcy court ignored Rule 3002 and 11 U.S.C. § 502, which protect lienholders even if no proof of claim is filed.

The court failed to account for the $64,187.00 in equity stripped from Prescott to fund the "carve-out," which unjustly benefited Hyman, who had no equity to bargain with.

No compromise occurred on Wilmington's side, and the proposed "settlement" effectively resolved a dispute between Wilmington and Prescott, with the trustee giving away Prescott's equity to settle Wilmington's claim.

Nevertheless, the District Court affirmed, citing Wilmington's allegedly

valid claim and asserting that the compromise benefited unsecured creditors. The court's ruling is flawed.

Wilmington's claim was capped at $272,805.36, consistent with the *Final Judgment*. Wilmington had been denied attorney's fees in state court and had never filed a motion for them; thus, the bankruptcy court's inclusion of those amounts lacked a legal basis.

Prescott held the vested right to receive proceeds above that amount from a foreclosure sale. Neither Prescott nor the Debtor's equity holders needed stay relief to defend themselves in the state court appeal.

The "carve-out" did not benefit the estate; it converted Prescott's secured claim into a fund for general distribution, amounting to a $64,187 windfall to Hyman at Prescott's expense.

The bankruptcy court misapplied every *Justice Oaks* factor. Its findings were unsupported by the record, based on factual and legal errors, and improperly subordinated Prescott's secured interest to the unsecured class without justification. The District Court's affirmance repeated those errors, particularly in misidentifying Wilmington as a party to the appeal and in misstating the nature and enforceability of claims.

This Court should reverse for the reasons stated in Issue "D" of Appellants'

*Initial* and *Reply Briefs* in the *Compromise Order Appeal*.

## Conclusion

WHEREFORE, Appellants, Tampa Hyde Park Cafe Properties, LLC, BAMC Development Holding, LLC, 1802 W Platt St LLC, and Robert Prescott, respectfully request that this Honorable Court reverse: (A) the *Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* entered on November 6, 2023; (B) the *Order Denying Motions for Reconsideration of Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Free and Clear of Liens, Claims, and Encumbrances* entered on December 11, 2023; (C) the *Order Granting Emergency Motion to Modify Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* entered on December 11, 2023; (D) the *Amended Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* entered on December 11, 2023; and (E) the *Order Granting Amended Verified Motion for Authority to Sell Property of the Estate Pursuant to 11 U.S.C. § 363 Free and Clear of Liens, Claims and Encumbrances* entered on December 11, 2023.

Respectfully submitted,

Walters Levine & DeGrave

601 Bayshore Blvd., Suite 720
Tampa, Florida 33606
Telephone: (813) 254-7474
Fax: (813) 254-7341

By: */s/ Heather A. DeGrave*
    Heather A. DeGrave
    Fla. Bar No. 756601
    hdegrave@walterslevine.com
    jduncan@walterslevine.com

## Certificate of Compliance Required by FRAP 32(g)(1)

This document complies with the type-volume limitation of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 10,993 words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

By: */s/ Heather A. DeGrave*
    Heather A. DeGrave
    Fla. Bar No. 756601

## Certificate of Service

I HEREBY CERTIFY that on July 14, 2025, a true and correct copy of the foregoing document was served electronically by virtue of the Court's CM/ECF System to counsel of record listed below:

Eric D. Jacobs, Esq.
Genovese Joblove & Battista, P.A.
ejacobs@gjb.law
100 N. Tampa Street, Suite 2600
Tampa, Florida 33602
Attorneys for Appellee

Christian Savio, Esq.
Manganelli, Leider & Savio, P.A.
csavio@mls-pa.com
1900 NW Corporate Blvd., 200w
Boca Raton, FL 33431
Attorneys for Interested Party
Wilmington Savings Fund
Society FSB, as Owner Trustee
of the Residential Credit
Opportunities Trust VI-A

By: */s/ Heather A. DeGrave*
     Heather A. DeGrave
     Fla. Bar No. 756601